SHIELDS, J.
This is a contested election case. The plaintiff in his petition avers that he is an elector of the city of Alliance in said Stark county. That on November 8, 1921, he was a candidate on an independent ticket, having theretofore been duly and legally nominated for the office of mayor of said city, and that the defendant having theretofore been duly nominated, was a candidate on the republican ticket for said office of mayor of said city. That on'November 14, 1921, the board of deputy state supervisors of elections of said Stark county canvassed said votes and found as a result of said election that said Clark had received 2,569 votes for said office and that the plaintiff had received 2,460 votes for said office, and declared that said Clark was duly elected to the office of mayor of said city.
He says that said Clark was not duly and legally elected to said office of mayor at said election and appeals from said declaration of said election upon the following grounds:
Because the ballots printed and furnished for and used at said election were invalid and not lawful, and not in conformity with the requirements of Secs. 5021-5026 G, C. and co-related sections, in this, that said independent ticket wholly failed to have a large blank circular space, three-fourths of an inch in diameter, above the list of candidates on said independent ticket, and wholly failed to have said circle or the space where said circle should have been, surrounded by the following words, printed in heavy faced nonpareil type: 11 For A Straight Ticket Mark Within Circle,” and thereby wholly failed to give each of the electors a clear .opportunity to designate by a cross *785 in said large blank circular space Ms choice of ticket and desire to vote as contemplated by said section, all of which was in fraud of the rights of the plaintiff as such candidate, whereby the plaintiff was deprived of having a fair, lawful and equal chance with the defendant for said office and whereby the plaintiff was deprived of having a correct count, and that by reason thereof said election was wholly void.
Said petition then recites that notwithstanding said ballots were illegally printed, the plaintiff received a plurality of all the legal votes cast at said election for mayor of said city and is entitled to receive a certificate of his election thereto from the board of deputy state supervisors of elections of said Stark county, for the reason that the ballots cast in certain precincts in certain wards in said city (named in said petition) were not properly and lawfully counted, but that in each of said precincts votes were counted for the defendant which should have been counted for the plaintiff, and that as a result of such unlawful count, there were approximately 300 ballots cast at said election for mayor which were not counted, tallied or certified. That if all the ballots legally cast for him at said election had been counted as cast, the plaintiff would have had,, and did have, a plurality of all the legal votes cast at said election and would have been declared elected as mayor of said city.
He asks that an order be issued to said board of deputy state supervisors of elections, directing it to preserve and produce in court the poll-books and tally sheets returned from each of said voting precincts in said city of Alliance and all the ballots cast at said election, that said ballots be re-opened, counted and' the time result of the vote at said election be ascertained, and that the declaration and certification of said board of deputy state supervisors of elections that said Norman W. Clark was elected mayor of said city of Alliance be set aside, and that the plaintiff, C. S. Westover, be found to be the duly elected mayor of said city.
In his answer the defendant admits that at the municipal election held in the city of Alliance, November 8, 1921, the plaintiff was an independent candidate and the defendant was *786 the duly nominated and contesting republican candidate for tbe office of mayor of said city of Alliance; tbat the board of deputy state supervisors of elections of said county canvassed tbe votes cast at said election for tbe office of mayor of said city and found as a result of said election tbat tbe defendant bad received 2,569 votes and that tbe plaintiff bad received 2,460 votes as such independent candidate for said office, and declared that tbe defendant was duly elected to said office of mayor of said city and issued to him a certificate of election in due form according to law, and except as in said answer admitted, tbe defendant denies the allegations in plaintiff’s petition.
In a cross petition tbe defendant avers tbat certain errors and mistakes were made in the count of tbe ballots cast at said election (which are set out at length in said cross petition) and tbat bad all tbe votes cast for him been properly counted be would have been entitled to a larger plurality than 109 votes, and be asks tbat said ballots be recounted, that the true result be ascertained and certified, and tbat said declaration and certification of tbe election of tbe defendant to said office of mayor be affirmed.
Acting under tbe authority granted by Sec. 5090-1, upon due application made, it appears tbat tbe court below issued its order to tbe board of deputy state supervisors of elections to preserve the original poll books and tally sheets and all tbe original ballots east by all tbe vpters returned from each of tbe thirty-two voting precincts of said city until tbe contest herein should be fully determined.
It likewise appears upon satisfactory evidence shown tbat said court determined tbat a recount of tbe vote east at said election on November 8, 1921, for tbe office of mayor of said city was necessary in precincts A and F of tbe First Ward, in B of tbe Second Ward, in B, C and G of tbe Third Ward, and in G, J and K of tbe Fourth Ward, in said city, and appointed a commission to make said recount in open court, and such recount having been made, and tbe court having received tbe report of said commission of said recount, together with other evidence *787 in the ease, found the issues joined in favor of the defendant, Norman W. Clark, and that said Norman W. Clark received 2,-693 legal votes at said election for the office, of mayor of the city of Alliance, that the plaintiff, C. S. Westover, received 2,-461 legal votes for said office, and said defendant, Norman W. Clark, having received a plurality of the legal votes so cast, was duly elected to said office of Mayor of said city at said election. That said court ordered and adjudged that the petition of the plaintiff be dismissed and that the defendant be declared the duly elected Mayor of said city. A motion for new trial was overruled and a judgment was entered for the defendant in accordance with said finding, from which finding and judgment the plaintiff appeals to this court.
In our analysis of the case, the single and only issuable question in the case is to be found in the plaintiff’s allegation “that said Independent ticket wholly failed to have a large blank circular space, three-fourths of an inch in diameter, above the list of candidates on said independent ticket, and wholly failed to have said circle, or the space where said circle should have been, surrounded by the following words, printed in heavy faced nonpareil type: ‘For A Straight Ticket Mark Within Circle.’ ” And this view was apparently shared by counsel, their sole contention in argument being based on the construe-1 tion of sections of the statutes claimed to be applicable to this feature of the case. That the solution of the question raised is determinable by statutory construction is quite evident, for all of our election machinery is of statutory origin and regulated and controlled by statutory legislation. Many of the old forms observed in elections have disappeared and new and other forms have taken their place.' The method of nominating candidates has been changed, new boards have been created and almost numberless other changes have been introduced in our voting and election system, all for the purpose of safeguarding the ballot and purifying elections.
Looking to the record, we find that the plaintiff was an Independent candidate for the office of mayor of the city of Alliance, nominated by petition under favor of Sec. 4999; that the *788 defendant, Norman'W. Clark, was the regularly nominated candidate on the Republican ticket for said office, and that Thomas H. Nichols was the democratic candidate for said office, the latter, however, makes no claim to said office and therefore does not figure in this contest. The plaintiff claims that the defendant Clark was not duly elected to said office and that said pretended election is null and void because he says the ballots furnished the electors of said city were not as the law prescribes they should have been and were therefore not lawful ballots, and that by reason thereof a fraud was perpetrated upon the plaintiff and upon all the electors in said city, in this, “that said ballots did not have the circle above the list of names of candidates on the independent ticket so as to give a clear opportunity to each and every voter, intelligent and illiterate alike, to vote a straight ticket. ’ ’ The record shows that in addition to the name of the plaintiff, C. S. Westover, on the independent ticket there was also the name of Raymond A. Wright, a candidate for councilman at large. That the form of the ballot is under the jurisdiction of the officers of the election laws of the state will not be questioned, and that irregularities or mistakes in matters affecting the nomination of candidates for municipal offices is subject to the jurisdiction of the board of deputy state supervisors of the county, and that its decision shall be final, is provided by Sec. 5006. While this section appears to specifically refer to irregularities in nomination papers, it was argued that its terms are sufficiently broad to include any irregularities in the form of'the ticket, but in any event the defendant urges that the plaintiff ought not to complain of the form of the ticket because weeks before said election he admitted having caused facsimile ballots to be printed and circulated, all of which charged him with knowledge of the form of the ballot adopted by said board of deputy state supervisors of elections of said county, to be voted at said election when he might have made objection thereto, and not having made any such objection, he should not be entitled to base a contest on such irregularity, if it be an irregularity. Allen v. Glynn, 17 Colo., 338 [29 Pac. 670; 15 L. R. A. 743; 31 Am. St. 304]; State v. Norris, 37 Neb., 299 [55 N. W. 1086].
*789 And if the plaintiff made nse of such ballot in circulating facsimiles thereof before election, with full knowledge of such alleged irregularity, he should not be heard to complain of its form after, the election. South Charleston, In re, 50 Bull., 173.
Ordinarily a person is estopped from taking advantage of his own wrong, and the defendant here pertinently raises the question as to whether the plaintiff, who instead of remonstrating against the alleged irregularity in the form of the prepared ballot, should hazard the outcome .of the election, and after being defeated, seek to nullify such election? The plain logic of the proposition seems to furnish the answer. Back of this proposition, as it seems, is the power lodged in the election officers by the legislature to arrange and determine the form of ballots, and to furnish them as provided by statute, and m the absence of fraud or mistake committed, or objection made, is such action reviewable by the courts? In State v. Ehrman, 2 Dec. 400 (30 Bull. 319), it is held that
“The board of deputy state supervisors of elections cannot be interfered with in matters of detail pertaining to the arrangement and printing of the official ballot. ’ ’
In Pugh Printing Co. v. Deputy State Supervisors 12 C. D. 477 (22 R. 584), it is laid down that—
“Courts cannot be substituted for the deputy state supervisors of elections. Neither can the courts control the supervisors in the exercise of their discretion. It is only when the courts find present some of the equitable grounds of fraud or mistake, or find the decision or award to be wrongful, fraudulent, collusive or arbitrary, that they can be set aside to restrain the conclusion or determination of such a board.”
And in State v. Graves, 90 Ohio St. 311-318 [107 N. E. 1018], it is held that the state supervisor and deputy state supervisors have full and final authority in the matters here referred to, reserving to the courts authority to relieve against abuse of discretion or fraud by such officers.
In view of these holdings we think it clearly appears that the action of the deputy state supervisors of elections is not reviewable by the courts, unless, as stated, it be shown that there *790 was an abuse of discretion or fraud. And this leads us up to the real question in controversy here: Did the board of deputy state supervisors of elections of said county fail to furnish such a ballot to the electors of said city at said election for mayor as the statutes prescribe ? The plaintiff claims that it did not ; the defendant claims it did. The plaintiff alleges “a constructively fraudulent ballot” was provided; the defendant alleges it was a lawful ballot. Let us examine the statutes on the subject which must determine the disputed question. As already stated, numerous statutes are enacted regulating the conduct of elections to which our attention has been called by counsel, but the main controversy here seems to hinge upon the construction to be given Sees. 5021 and 5026.
Section 5021 is as follows:
“The ballot shall be so printed as to give each elector a clear opportunity to designate by a cross mark in a large blank circular space, three quarters of an inch in diameter, below the device and above the name of the party at the head of the ticket or list of candidates his choice of a party ticket and desire to vote for each and every candidate thereon, and by a cross mark in a blank enclosed space on the left and before the name of each candidate his choice of particular candidates.”
Section 5026 is as follows:
“The heading of each party ticket, including the name of the party, the device above and the large circle between the device and such name shall be separated from the rest of the ticket by a heavy line, and the circle above the name of the party in which the voter is to place the cross mai'k, if he desires to vote the straight ticket, shall be defined by heavier lines than the lines defining the blank spaces before the names of candidates, and such circle shall be surrounded by the following words, printed in heavy face non-pareil type: 'For a straight ticket mark within this circle.’ ”
Counsel for defendant say “Mr. Westover was nominated by petition and was certified and was put on the ballot at the head of the independent ticket,” but the record does not show that any “Independent ticket” was certified to the board of deputy state supervisors of elections, or that any such ballot was formulated or provided by said board to be voted at said elec *791 tion for the office of mayor of said city. True, the names of C. S. "Westover for mayor and the said candidate for councilman at large were placed upon the ticket to be voted for, not however on an “Independent ticket” bid as independent candidates for said respective offices. Although the names of these candidates were on the same ballot, there appears no connection whatever between them as candidates forming an “Independent ticket.”
As we read Sec. 5021 it applies only to a party having a device, or to some party organization having a name. Party in the sense here used implies organization and said section is clearly intended to extend to and include party organizations, and not individuals as such. It refers to an association of persons formed for political purposes, and the device authorized by Sec. 5014 is one selected and adopted by the party in state convention. The device selected, therefore, is one designating the name of a party and in no sense applies to an individual. Here the plaintiff was a candidate for said office of mayor, not of a party, but as an independent candidate, as stated, with no political organization or committee back of his candidacy, but the defendant says that said section provides that “the ballot shall be so printed as to give each elector a clear opportunity to designate by a cross mark in a large blank circular space three-quarters of an inch in diameter, below the device and above the name of the party at the head of the ticket or list of candidates his choice of a party ticket, etc.,” and “list of candidates” refers to candidates on any ticket, with or without any party device. The language of the statute is “below the device and above the name of the party at the head of the ticket or list of candidates.” Section 5017 provides that “every ballot shall contain the names of all the candidates whose nominations for any office have been duly made, arranged in tickets or lists under the respective party or political or other designation.” Construing these two sections together (for they are in the same chapter) we think that the word “lists” as used by the legislature in Sec. 5021 refers to a political party or organization. But whatever its meaning, it is urged upon behalf of the plaintiff, that although an independent candidate, he was en *792 titled to have the circular space at the head of the column in which his name appeared on the ticket that the electors o£ said city might share the same privilege accorded to the other candidates on the same ticket, in voting a straight ticket by placing a cross in said circle. The mere absence of the circle, we take it, could work no prejudice to the defendant who had no party or party organization or party emblem. Ballots marked either at the top of the ticket or in the square opposite his name, or otherwise indicating the intention of the voter to vote for him, would be properly counted for him as such candidate. In State v. Markley, 30 O. C. C. 113 (9 N. S. 561), it is held that
“Inasmuch as a single candidate on a nonpartisan ticket has no party emblem and no one else can go on that ticket, the printing on the nonpartisan ticket of words indicating various offices to be filled and voted for with a circle above and blocks outside of the column will be regarded as surplusage; and if a voter makes a mark above or below or on the side or at the top of the column occupied by the name of the non-partisan candidate, his intention to vote for such candidate is clearly indicated and the ballot should be counted. ’ ’
As is common knowledge, the judicial ticket voted is nonpartisan, and is not the independent candidate on the same footing with reference to the absence of a circle on the ticket? In the light of the reasoning in the opinion of the court in the case cited, it is just the same. Counsel for the defendant cite us to the case of State v. Ehrman, 2 Dec. 400 (30 Bull. 319), although a case in mandamus, it involves the same question as made in the ease at bar. In the opinion in that case, Judge Sayler says:
“In the case at bar the plaintiff has the clear legal right to have the ticket printed on the official ballot; but he avers that the ticket is about to be printed according to law and the prayer of the nomination papers, on the official ballot. He complains, however, that the board refuses to print the circular space at the top.
“The board has determined, on a hearing had, that a proper construction of the statute precludes the printing of the circular space at the head of this ticket, because this ticket is not a party ticket, but is a ticket containing names of independent .candidates as designated in Sec. 8 and that the list of independent candidates is not entitled to the circular space.”
*793 Although a nisi prius case, the principles of law announced therein harmonize with the views entertained by this court as being applicable to the case before us. As already stated, while we think that the action of the deputy state supervisors of elections was conclusive and final in the matter of preparing the form of the ballot in question, still judicial action having been invoked in this case, we are unanimously of the opinion that the absence of the circle, surrounded with the words “For A Straight Ticket Mark Within This Circle” (provided for in Sec. 5026) on the independent ticket voted for the office of mayor of said city of Alliance held on November 8, 1921, did not invalidate the ballot containing the name of the plaintiff as a candidate-on said ticket, nor was it necessary that said circle and designation appear thereon to give validity to the form of said ballot.
A judgment may be entered herein in favor of the defendant, Norman W. Clark, as prayed for in his cross petition, confirming the declaration of his election as mayor of the city of Alliance, Ohio, under the election held in said city on November 8,1921, and the petition of the plaintiff will be dismissed, at his costs.
Houck and Patterson, JJ., concur.